1  **KAMBERLAW, LLC**
2  Frederick J. Klorczyk III (State Bar No. 320783)
   305 Broadway, Suite 713
3  New York, NY 10007
   Phone: 646.964.9604
4  Fax: 212.202.6364
5  Email: fklorczyk@kamberlaw.com

6  **LAUKAITIS LAW LLC**
   Kevin Laukaitis (*pro hac vice forthcoming*)
7  954 Avenida Ponce De Leon
   Suite 205, #10518
8  San Juan, PR 00907
   Phone: (215) 789-4462
9  Email: klaukaitis@laukaitislaw.com

10
   *Attorneys for Plaintiff and*
11 *the Proposed Class*

12
                **IN THE UNITED STATES DISTRICT COURT**
13
              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
14

15 | WENDELL ROWE, individually, and      | **CASE NO. 3:25-cv-09910**
16 | on behalf of others similarly situated, |
   |                                        |
17 |                     Plaintiff,         | **CLASS ACTION COMPLAINT**
18 |        vs.                             | **DEMAND FOR JURY TRIAL**
19 | WHOOP, INC.,                           |
20 |                     Defendant.         |
21

22     Plaintiff Wendell Rowe ("Plaintiff"), individually and on behalf of all others

23 similarly situated, brings this action against Defendant, Whoop, Inc. ("Defendant" or

24 "Whoop"). Plaintiff's allegations as to Plaintiff's own actions are based on personal

25 knowledge. The other allegations are based on counsel's investigation, and information

26 and belief.

27              **INTRODUCTION AND FACTUAL BACKGROUND**

28     1.    This putative class action seeks to hold Defendant responsible for

---

**CLASS ACTION COMPLAINT**

representations made in connection with the sale of its Whoop Life Membership and Whoop MG Device ("Product").

2.    Defendant offers three different levels of Whoop performance and fitness trackers to consumers: the Whoop One, the Whoop Peak, and the Whoop Life.

3.    Defendant claims that the Whoop MG device – offered only with the Whoop Life Membership – is the "most powerful WHOOP ever, delivering medical-grade health and performance insights."

4.    A key feature unique to the Whoop Life Membership and Whoop MG Device is Blood Pressure Insights ("BPI").

5.    The BPI feature allows users to "[g]et systolic and diastolic ranges, and learn about how blood pressure affects well-being and performance," by providing the blood pressure reading on a gauge that uses green, yellow, and orange color-coding to indicate a target blood pressure range.

6.    According to Defendant, the Product "takes performance tracking to the next level with features including Blood Pressure Insights" as it is the "only wearable offering daily blood pressure insights in a seamless wrist-based format."

7.    However, on July 14, 2025, the United States Food and Drug Administration ("FDA") sent Defendant a warning letter advising that "FDA has not authorized BPI for any use, including for the measurement or estimation of a user's blood pressure." [1] According to FDA, Defendant's BPI feature is intended to diagnose, cure, treat, or prevent disease — a key distinction that would reclassify the wellness tracker as a "medical device" that has to undergo rigorous testing and approval processes.

8.    "Providing blood pressure estimation is not a low-risk function," FDA said in the letter.  "An erroneously low or high blood pressure reading can have significant consequences for the user."

9.    High blood pressure, also called hypertension, is the number one risk factor

---

[1] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/whoop-inc-709755-07142025

**CLASS ACTION COMPLAINT**

for heart attacks, strokes, and other types of cardiovascular disease, according to Dr. Ian Kronish, an internist and co-director of Columbia University's Hypertension Center.[2]

10.    FDA determined that the Products are not only "adulterated under section 501(f)(1)(B) of the Act, 21 U.S.C. § 351(f)(1)(B)," but they are "also misbranded under section 502(o) of the Act, 21 U.S.C. § 352(o).   As a result, Defendant has violated California's Sherman Law.  *See* Cal. Health & Saf. Code § 111550.

11.    The Products are adulterated and misbranded under the law, legally worthless, and subject to immediate recall. Because the Product is misbranded, it is not legally saleable.  *See* Cal. Health and Safety Code §§ 110385, 111440, 111450.

12.    Reasonable consumers of Defendant's Products, like Plaintiff, are misled and deceived by Defendant's representations concerning the BPI feature.

13.    Plaintiff and reasonable consumers suffered economic injury based on the purchase price of the Products.

14.    Because the Product was unlawful to sell in California at the time of purchase, it was legally worthless.   Consumers like Plaintiff necessarily suffered economic injury the moment they paid for a product that could not legally be marketed or sold.

15.    Defendant did not disclose that the Product lacked FDA authorization, was not legally saleable, and could not lawfully provide the medical-grade blood-pressure features that justified its premium price.  As a result, every purchaser paid for a product that could not legally be sold and did not possess the capabilities Defendant advertised.

16.    If Plaintiff had known the truth about Defendant's false and misleading Representation, he would not have purchased the Product or would have paid less for it.

## PARTIES

17.    Plaintiff Wendell Rowe is a citizen of California who resides in Pleasanton, California who purchased the Product in this judicial district during the class period, as

---

[2] https://www.cnbc.com/2025/07/15/whoop-fda-blood-pressure-feature-wearables.html

**CLASS ACTION COMPLAINT**

described herein.  In 2025, Plaintiff Rowe purchased the Product for his personal use from a Best Buy store located in Alameda County.  Prior to his purchase of the Product, Plaintiff Rowe reviewed Defendant's website to learn about the different membership options and features offered by each.  Plaintiff Rowe saw the representation on the front of the packaging that the Whoop MG Device was a "Heart Screener," as well the representation on the back of the packaging that the Whoop MG Device is a "Medical-grade Heart Screener with ECG for AFib detection and heart health insights."  Plaintiff Rowe also saw that the Whoop Life Membership utilized the Whoop MG Device and offered the BPI to provide daily medical-grade blood pressure readings.  Plaintiff Rowe relied on these representation to choose the Whoop Life Membership over the Whoop One Membership and Whoop Peak Membership.    Plaintiff Rowe saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that the Product provides daily medical-grade blood pressure readings. Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the Whoop Life Membership on the same terms had he known these representations were not true.  However, Plaintiff Rowe remains interested in purchasing the Product and would consider the Product in the future if Defendant ensured the Product actually provides daily medical-grade blood pressure readings.  In making his purchase, Plaintiff Rowe paid a substantial price premium due to the false and misleading representations about the BPI feature.  However, Plaintiff Rowe did not receive the benefit of his bargain because the Product, in fact, is not able to provide daily medical-grade blood pressure readings.  Plaintiff Rowe further understood that the purchase came with Defendant's representation and warranties that the Product provides daily medical-grade blood pressure readings.

18.    Plaintiff Rowe specifically compared the features of the Whoop One, Peak, and Life tiers and selected the Life Membership solely because it was advertised as the only tier capable of delivering medical-grade blood pressure insights.  The BPI feature was the primary – and for Plaintiff, the exclusive – reason he selected the Life tier instead

**CLASS ACTION COMPLAINT**

of the significantly cheaper One or Peak tiers.

19.    The price premium for the Life Membership is justified almost entirely by the BPI and medical-grade capabilities that Defendant represented it offered.    No reasonable consumer would pay the elevated price for the Life tier absent the promised medical-grade blood pressure functionality.    Plaintiff relied on these representations and would not have purchased the Life tier, or would have paid substantially less, had he known the Product lacked FDA authorization and could not legally or technically provide medical-grade blood pressure readings.

20.    Defendant Whoop, Inc. is a Delaware corporation with its principal place of business at One Kenmore Square, Suite 601, Boston, Massachusetts 02215, and is a citizen of Delaware and Massachusetts.

21.    Defendant Whoop, Inc. manufactures, markets, sells, and/or distributes the Product, and is responsible for the advertising, marketing, trade dress, and packaging of the Product.    Defendant manufactured, marketed, and sold the Product during the class period.    The planning and execution of the advertising, marketing, labeling, packaging, testing, and corporate operations concerning the Whoop Life Membership, the Whoop MG Device, and the Blood Pressure Insights feature were primarily carried out at Defendant's headquarters and facilities within Massachusetts.    The policies, practices, acts, and omissions giving rise to this action were developed in, and emanated from, Defendant's headquarters in Boston, Massachusetts.

## JURISDICTION AND VENUE

22.    This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are over 100 members in the proposed class; (2) members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

23.    This Court has personal jurisdiction over Defendant because a substantial portion of the events that gave rise to Plaintiff's claims occurred in California.    This

**CLASS ACTION COMPLAINT**

Court also has personal jurisdiction over Defendant because Defendant conducts and transacts business in the state of California, contracts to supply goods within the State of California, and supplies goods within the State of California.

24.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial portion of the events that gave rise to Plaintiff's claims occurred in this District. *See also* Declaration of Wendell Rowe Regarding Venue Pursuant to Cal. Civ. Code § 1780(d), attached as Ex. A.

## **FACTUAL ALLEGATIONS**

### A. **Reasonable Consumers Believe That The Whoop MG Device Provides Medical-Grade Blood Pressure Insights**

25.    Defendant offers consumers three different annual membership options, each with a different version of the Whoop device:[3]

- Whoop One Membership, which comes with the Whoop 4.0 device, for $150 per year;
- Whoop Peak Membership, which comes with the Whoop 5.0 device, for $239 per year; and
- Whoop Life Membership, which comes with the Whoop MG device, for $359 per year.

26.    As Defendant describes it, Whoop One is for those "focused on fitness performance," Whoop Peak is for those focused on "longevity and health management," and Whoop Life is for those focused on "advanced health and heart monitoring:"[4]

---

[3] https://www.whoop.com/us/en/membership/

[4] https://www.whoop.com/us/en/thelocker/introducing-whoop-5-0-and-whoop-mg/?srsltid=AfmBOooolhkFjxdphR22NnmRSOBpJRbZt-Ux0DNg1-FizNF6Gvm1zeOt

**CLASS ACTION COMPLAINT**

# Your goals, your membership

With these groundbreaking devices, there are also three new tailored membership tiers: **WHOOP One, WHOOP Peak, and WHOOP Life**. Whether you're focused on fitness performance (One), longevity and health management (Peak), or advanced health and heart monitoring (Life), there's a membership designed for your goals and lifestyle. Each plan includes powerful insights and coaching to help you build better habits and optimize your health and fitness for years to come.

27.    The primary distinctions for the Whoop Life Membership are:

- WHOOP MG with 14 day battery
- Daily Blood Pressure Insights
- Heart Scanner with ECG readings
- On-demand AFib Detection



28.    Defendant claims that the Whoop MG device – offered only with the Whoop Life Membership – is the "most powerful WHOOP ever, delivering medical-grade health and performance insights":[5]

---

[5] https://www.whoop.com/us/en/life/

**CLASS ACTION COMPLAINT**

29.    The Whoop Life Membership is designed "for those who want the most advanced view of their health" because it "delivers unparalleled insights" and allows consumers to "[m]onitor [their] heart with on-demand ECG readings, gain daily blood pressure insights, and build habits that support [their] longevity:"[6]



30.    Defendant distinguishes Whoop Life Membership from the Whoop One

_____

[6] https://www.whoop.com/us/en/life/

**CLASS ACTION COMPLAINT**

and Peak Memberships by specifically highlighting that Whoop Life "deliver[s] medical-grade health & performance insights" using the Whoop MG device and provides "Daily Blood Pressure Insights" ("BPI"):[7]



31.    The BPI feature allows users to "[g]et systolic and diastolic ranges, and learn about how blood pressure affects well-being and performance:"[8]



32.    "WHOOP MG introduces innovative Blood Pressure Insights, providing

---

[7] https://www.whoop.com/us/en/life/

[8] https://www.whoop.com/us/en/life/

9

**CLASS ACTION COMPLAINT**

daily estimates of systolic and diastolic ranges right from your wrist."[9]  The daily blood pressure readings are delivered on a gauge that uses green, yellow, and orange color-coding to indicate a target blood pressure range:



33.    "WHOOP measures the metrics scientifically proven to make the most significant impact on your health.  It also outperforms other leading wearables delivering over 99% heart rate and HRV tracking accuracy and gold-standard sleep tracking.":[10]

Track every metric that matters

WHOOP measures the metrics scientifically proven to make the most significant impact on your health. It also outperforms other leading wearables delivering over 99% heart rate and HRV tracking accuracy and gold-standard sleep tracking.

EXPLORE THE METRICS

---

[9] https://www.whoop.com/us/en/thelocker/introducing-whoop-5-0-and-whoop-mg/?srsltid=AfmBOooolhkFjxdphR22NnmRSOBpJRbZt-Ux0DNg1-FizNF6Gvm1zeOt

[10] https://www.whoop.com/us/en/difference/#comprehensive

CLASS ACTION COMPLAINT

34.    Defendant claims that Whoop Life is able to provide users with "daily blood pressure insights" through technology in the Whoop MG Device that "collects thousands of biometric data points overnight to provide [consumers] with automatic estimated systolic and diastolic ranges," thereby allowing users to "learn how [their] blood pressure affects [their] well-being and performance":[11]



35.    On the front packaging for the Whoop MG Device, Defendant represents the Whoop MG Device is a "Heart Screener:"



36.    On the back packaging for the Whoop MG Device, Defendant further represents the Whoop MG Device is a "Medical-grade Heart Screener with ECG for AFib detection and heart health insights:"



37.    On May 8, 2025, Defendant published an article on its website titled "WHOOP Delivers Innovative Blood Pressure Insights for a Deeper Look at Your Well-

---

[11] https://www.whoop.com/us/en/how-it-works/

**CLASS ACTION COMPLAINT**

Being."[12]

38.     In that article, Defendant describes BPI as "a groundbreaking feature available on WHOOP Life that provides daily systolic and diastolic blood pressure estimations, offering members a new way to understand how blood pressure affects their performance and well-being.  This patent-pending technology gives you these insights right from your wrist."

39.     In the section titled "How does it work?", Defendant explains that the "WHOOP sensors measure heart rate, heart rate variability ('HRV'), and blood flow patterns during sleep to estimate systolic and diastolic ranges upon waking. … Systolic and diastolic blood pressure are two key measurements that indicate the force of blood against your artery walls."

40.     In the section titled "Why does it matter?", Defendant explains that "[b]lood pressure is a key indicator of overall wellness and has impacts on" mental and physical performance, sleep, and stress.  According to Defendant, "[s]leep and blood pressure have a two-way relationship.  This means that not getting enough good sleep can affect your blood pressure, and having higher blood pressure can in turn make it harder to sleep well.":[13]

## Why does it matter?

Blood pressure is a key indicator of overall wellness and has impacts on:

- Mental and physical performance

- Sleep: Sleep and blood pressure have a two-way relationship. This means that not getting enough good sleep can affect your blood pressure, and having higher blood pressure can in turn make it harder to sleep well.

- Stress: It's commonly understood that blood pressure can give insights into your levels of stress.

41.     In the section titled "Unlock a new era of health insights with WHOOP," Defendant boasts that Whoop Life not only "takes performance tracking to the next level

---

[12] https://www.whoop.com/us/en/thelocker/blood-pressure-insights/

[13] https://www.whoop.com/us/en/thelocker/blood-pressure-insights/

**CLASS ACTION COMPLAINT**

with features including Blood Pressure Insights," but also that the Whoop MG Device is the "only wearable offering daily blood pressure insights in a seamless wrist-based format:"[14]

## Unlock a new era of health insights with WHOOP

The all-new WHOOP Life takes performance tracking to the next level with features including Blood Pressure Insights. As the only wearable offering daily blood pressure insights in a seamless wrist-based format, WHOOP continues to push the boundaries of technology.

42.    Some believe that once you define a feature as 'for wellness,' it automatically becomes non-medical, no matter what it measures," Yusuf Cem Kaplan, a physician and former medical advisor at Flo Health, wrote in a LinkedIn post. "But as a medical doctor, I can say that some features carry diagnostic weight no matter how gently you present them.  Blood pressure is one of those.":[15]

In health tech, I have been observing that intended use has become a magic phrase. Some believe that once you define a feature as "for wellness," it automatically becomes non-medical, no matter what it measures.

But as a medical doctor, I can say that some features carry diagnostic weight no matter how gently you present them. Blood pressure is one of those. It sits right in the gray zone, technically non-diagnostic, but clinically and socially interpreted as meaningful. Blood pressure is part of decades of screening campaigns. It's strongly framed in public health messaging as a condition to manage.

43.    Defendant's representations regarding BPI lead reasonable consumers to believe that the Whoop MG device provides daily medical-grade systolic and diastolic blood pressure estimations.

44.    As a result, Defendant is able to charge a significant price premium for the Whoop Life Membership to the tune of $210 more than the Whoop One Membership, and $120 more than the Whoop Peak Membership.

---

[14] https://www.whoop.com/us/en/thelocker/blood-pressure-insights/

[15] https://www.medtechdive.com/news/whoop-fda-warning-letter-blood-pressure-wellness/753489/

**CLASS ACTION COMPLAINT**

**B. <u>The Whoop MG Device Is Not Capable Of Providing Medical Grade Blood Pressure Readings</u>**

45.    On July 14, 2025, the United States Food and Drug Administration ("FDA") sent Defendant a warning letter advising that the "FDA has not authorized BPI for any use, including for the measurement or estimation of a user's blood pressure."[16]

46.    FDA concluded that Defendant "offers BPI to users and intends for those users to measure or estimate their blood pressure. [Defendant's] website describes the product as providing 'daily systolic and diastolic blood pressure estimations, offering members a new way to understand how blood pressure affects their performance and well-being.' [Defendant's] website further lists BPI as an example of how WHOOP is 'delivering medical-grade health & performance insights.'"

47.    FDA determined BPI is "adulterated under section 501(f)(1)(B) of the Act, 21 U.S.C. § 351(f)(1)(B), because [Defendant] does not have an approved application for premarket approval ('PMA') in effect pursuant to section 515(a) of the Act, 21 U.S.C. § 360e(a), or an approved application for an investigational device exemption under section 520(g) of the Act, 21 U.S.C. § 360j(g)."

48.    FDA further determined that the Whoop MG Device is "also misbranded under section 502(o) of the Act, 21 U.S.C. § 352(o), because [Defendant] did not notify the agency of its intent to introduce the device into commercial distribution, as required by section 510(k) of the Act, 21 U.S.C. § 360(k)."

49.    "Based on FDA's evaluation of BPI's intended use, <u>the product is intended to provide a measurement or estimation of a user's blood pressure</u>, which is inherently associated with the diagnosis of hypo- and hypertension, and is therefore intended for use in the diagnosis of a disease or other condition, or in the cure, mitigation, treatment, or prevention of disease."

50.    "This conclusion is bolstered by both your firm's statements about BPI (e.g.,

---

[16] https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/whoop-inc-709755-07142025

**CLASS ACTION COMPLAINT**

"**Higher blood pressure** may be an indicator of poor sleep." [emphasis added]) and BPI's design, which outputs a blood pressure measurement to users and provides the reading on a gauge that uses green, yellow, and orange color-coding to indicate a target blood pressure range." (emphasis in original).

51.    FDA's conclusion "is consistent with prior FDA actions, as FDA has reviewed and cleared as a medical device other blood pressure measurement products intended to provide a measurement or estimation of a user's blood pressure without explicit reference to diagnosis of hypo- or hypertension in their labeling or otherwise (e.g., devices authorized within product code DXN), because of the measurement's inherent association with those conditions.[17]  [footnote in original]. BPI has the same intended use as those devices – i.e., to provide blood pressure measurement."

52.    "This understanding of a blood pressure measurement device's intended use is also supported by FDA's classification regulations, which do not include explicit references to diagnosis of hypo-or hypertension (e.g., 21 CFR 870.1130).  Although BPI provides a daily blood pressure range and midpoint measurement instead of a real-time reading, that is not sufficient to distinguish the product's intended use from other blood pressure measurement devices, because a blood pressure range or midpoint estimation, like a real-time reading, is inherently associated with the diagnosis of hypo- and hypertension."[18] [footnote in original].

---

[17] "High blood pressure, also called hypertension, is blood pressure that is higher than normal." https://www.cdc.gov/high-blood-pressure/about/index.html. See also "ACC/AHA/AAPA/ABC/ACPM/AGS/APhA/ASH/ASPC/NMA/PCNA Guideline for the Prevention, Detection, Evaluation, and Management of High Blood Pressure in Adults: A Report of the American College of Cardiology/American Heart Association Task Force on Clinical Practice Guidelines," https://www.ahajournals.org/doi/10.1161/hyp.0000000000000065.

[18] "Indeed, it is common for blood pressure measurement devices to supply a range associated with the device's reading, either in labeling or through the device itself. These outputs also typically represent an estimate of blood pressure with inherent uncertainty to account for variability demonstrated in clinical validation studies, as described in the labeling for devices authorized under product code DXN."

**CLASS ACTION COMPLAINT**

53.    "Even accounting for BPI's disclaimers, they do not change this conclusion, because they are insufficient to outweigh the fact that <u>the product is, by design, intended to provide a blood pressure estimation that is inherently associated with the diagnosis of a disease or condition</u>. The inefficacy of such disclaimers is demonstrated by evidence of individuals using BPI to monitor their hypertension."

54.    "Per section 520(o)(1)(B) of the Act, a software function is not a device if it is intended for maintaining or encouraging a healthy lifestyle and is unrelated to the diagnosis, cure, mitigation, prevention, or treatment of a disease or condition. BPI is not intended to 'maintain' or 'encourage' a healthy lifestyle, as it implies a causal link between a user's blood pressure measurement and wellness results. For example, BPI and its labeling would indicate to a user that her poor sleep may be caused by high blood pressure identified by the device. Further, as noted above, BPI is not unrelated to the diagnosis, cure, mitigation, prevention, or treatment of a disease or condition, because it is inherently associated with the diagnosis of hypo- and hypertension, and because your firm's statements indicate that BPI is intended to identify 'higher blood pressure.'"

55.    As FDA elaborated, "[p]roviding blood pressure estimation is not a low-risk function. High blood pressure is the most prevalent modifiable risk factor for cardiovascular disease in this country. Although traditionally blood pressure has been checked in a healthcare setting, ambulatory blood pressure checks are now in the American Heart Association (AHA) guidelines …, and individuals are encouraged to check their own blood pressure at home."

56.    "An erroneously low or high blood pressure reading can have significant consequences for the user. For example, if an individual with hypertension used a device that resulted in falsely low blood pressure measurements, those results could lead to inappropriate reassurance that they have a normal blood pressure. This could be compounded by elevated blood pressure measurements at their doctor's office which may be misinterpreted as white coat hypertension."

57.    "This can result in a delay or even a lack of treatment, which can result in

**CLASS ACTION COMPLAINT**

serious impacts to that patient's cardiovascular health and end organ damage.  These include stroke, heart attack, heart failure, kidney failure, cognitive decline, and premature death."

58.    "Inaccurate or imprecise measurements are especially concerning for a disease like hypertension because it often presents without physical symptoms.  The [FDA's guidance 'General Wellness: Policy for Low Risk Devices'] further states that 'In assessing whether a product is low risk for purposes of this guidance, FDA recommends that you also consider whether CDRH actively regulates products of the same type as the product in question.'  FDA actively regulates devices intended to measure or estimate a user's blood pressure (see 21 CFR 870.1130)."

59.    As noted above, FDA already determined that the Products are not only "adulterated under section 501(f)(1)(B) of the Act, 21 U.S.C. § 351(f)(1)(B)," but they are "also misbranded under section 502(o) of the Act, 21 U.S.C. § 352(o).  As a result, Defendant has violated California's Sherman Law.  *See* Cal. Health & Saf. Code § 111550.  The Products are therefore adulterated and misbranded under the law, legally worthless, and subject to immediate recall.

60.    Because the Products are misbranded, they are not legally saleable.  *See* Cal. Health and Safety Code §§ 110385, 111440, 111450.

## CLASS ALLEGATIONS

61.    ***Class Definition***:  Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself, on behalf of all others similarly situated, and as a member of the Class defined as follows:

> All citizens of California who, within four years prior to the filing of the initial Complaint, purchased Defendant's Product for personal or household use and not for resale in the State of California ("Class").

62.    Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has a controlling interest; (iii) federal, state, and/or local governments, including, but not limited to, their

**CLASS ACTION COMPLAINT**

departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and their staff, and persons within the third degree of consanguinity to such judicial officer.

63.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

64.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

65.    ***Numerosity*:**  Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Class consists of hundreds of thousands of purchasers throughout the State of California.  Accordingly, it would be impracticable to join all members of the Class before the Court.

66.    ***Commonality and Predominance*:**  There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

- Whether the medical-grade blood pressure insights representations are false, misleading, and/or deceptive;
- Whether Defendant engaged in unlawful, unfair, or deceptive business practices by advertising, labeling, and selling the Products;
- Whether Defendant violated California Bus. & Prof. Code § 17200, *et seq*.; Cal. Bus. & Prof. Code § 17500, *et seq*.; and/or the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;
- Whether Plaintiff and the Class have sustained damage as a result of Defendant's unlawful conduct;
- The proper measure of damages sustained by Plaintiff and the Class; and

**CLASS ACTION COMPLAINT**

- Whether Defendant was unjustly enriched by its unlawful practices.

67.   ***Typicality***:  Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent because Plaintiff, like the Class members, purchased Defendant's misbranded Products.   Defendant's unlawful, unfair, and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct.  Plaintiff's and Class members' claims arise from the same practices and course of conduct and are based on the same legal theories.

68.   ***Adequacy***:  Plaintiff will fairly and adequately protect the interests of Class members.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Plaintiff has no interests that are antagonistic to those of the Class.  Plaintiff has no past or present financial, employment, familial, or other relationship with any of the attorneys in this case that would create a conflict of interest with the proposed class members.

69.   ***Superiority***:  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

70.   Without a class action, Defendant will continue a course of action that will result in further damages to the Plaintiff and Members of the Class and will likely retain the benefits of its wrongdoing.

## <u>CAUSES OF ACTION</u>

### <u>COUNT I</u>
**Violations of California's Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code §§ 17200 *et seq.*)**

**CLASS ACTION COMPLAINT**

71.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

72.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

73.    Defendant's conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code §§ 17200, *et seq*. (the "UCL").  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

74.    Plaintiff brings this claim seeking restitution or disgorgement of the amounts Defendant acquired through the unfair, unlawful, and fraudulent business practices, as described herein; and injunctive relief to stop Defendant's misconduct, as described herein.

75.    Defendant's knowing conduct, as alleged herein, constitutes a "fraudulent" and/or "unfair" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

### *Defendant's Conduct Constitutes a Fraudulent Business Practice*

76.    Defendant's conduct constitutes a fraudulent business practice because, as set forth herein, consumers are likely to be deceived by Defendant's representations that the Product provides daily medical-grade blood pressure readings.

77.    Defendant was and is aware that its representations are material to consumers.

78.    Defendant was and is aware that its representations are misleading, as described herein.

79.    Defendant had an improper motive – to derive financial gain at the expense of accuracy or truthfulness – in its practices related to the labeling and advertising of the Products.

80.    There were reasonable alternatives available to Defendant to further

**CLASS ACTION COMPLAINT**

Defendant's legitimate business interests, other than the conduct described herein.

***Defendant's Conduct Constitutes an Unfair Business Practice***

81.    Defendant's conduct violates both the "Immoral Test" and the "Balancing Test" under California law, which are used to analyze whether conduct is "unfair".

82.    Defendant's conduct violates the Immoral Test because Defendant intentionally makes the representations to increase sales of the Products.

83.    Defendant was and is aware that its representations are misleading, as described herein.

84.    Defendant's conduct is substantially injurious because consumers purchase the misrepresented Products in reliance on Defendant's representations.

85.    Defendant's conduct also violates the "Balancing Test" because the utility of Defendant's conduct in labeling the Products with the representations is outweighed by the harm to consumers.

86.    As set forth herein, the representations are an optional, voluntary advertising statement.

87.    Defendant makes the representations to increase sales of the Products and to the detriment of consumers, who are misled and deceived.

88.    Consumers are directly harmed by Defendant's conduct in that they would not have purchased the Products if they had known the truth.

89.    Defendant's conduct is also substantially injurious because it prevents consumers from making informed purchasing decisions.

90.    In addition, Defendant's conduct is injurious to competition because Defendant's misrepresentation of its Products prevents consumers from making an informed choice between its Products and other similar products, which are not misrepresented.

91.    Defendant had an improper motive – to derive financial gain at the expense of accuracy or truthfulness – in its practices related to the labeling and advertising of the Products.

**CLASS ACTION COMPLAINT**

92.    There were reasonable alternatives available to Defendant to further Defendant's legitimate business interests, other than the conduct described herein.

93.    Plaintiff and members of the Class could not have reasonably avoided injury. Defendant's representations regarding the Products were likely to deceive, and Defendant knew or should have known that its representations were misleading.

94.    Plaintiff purchased the Products with the reasonable belief that the Product provides daily medical-grade blood pressure readings, and without knowledge that the Product could not provide daily medical-grade blood pressure readings.

### *Defendant's Conduct Constitutes an Unlawful Business Act*

95.    Defendant's misrepresentation of material facts, as set forth herein, also constitutes an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770 and the laws and regulations cited herein, as well as the common law.[19]

96.    Defendant's conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors.

97.    This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

---

[19] The California Civil Code Sections prohibit the following conduct: (i) § 1572: actual fraud, including by suggestion of an untrue fact or suppression of that which is true; (ii) § 1573: constructive fraud, including by breach of duty "by misleading another to his prejudice" and in any act or omission that the law declares to be fraudulent; (iii) §§ 1709-1711: willfully deceiving another or a particular class of persons "with intent to induce him to alter his position to his injury or risk", including by suggestion of a fact that is not true or suppression of a fact by one who is bound to disclose it, or by giving information "of other facts which are likely to mislead for want of communication of that fact"; (iv) § 1770: listing proscribed practices, including unfair methods of competition and unfair or deceptive acts and practices, as described herein.

**CLASS ACTION COMPLAINT**

98.    In addition, Defendant's representations constitute an "unlawful" practice because the Product representations are "false or misleading in any particular" and the Products are therefore adulterated and misbranded under the law.  *See* 21 U.S.C. § 352; Cal. Health and Safety Code § 111550.

99.    Because the Products are misbranded, they are not legally saleable.  *See* Cal. Health and Safety Code §§ 110385, 111440, 111450.

100.    Selling an adulterated or misbranded medical device is per se unlawful in California under the Sherman Law, which adopts federal FDA standards.  Defendant's sale of the Whoop Life Membership, therefore, violates California law regardless of consumer deception, providing an independent basis for liability under the UCL's unlawful prong.

101.    Plaintiff and members of the Class could not have reasonably avoided injury.  Defendant's uniform, material misrepresentations regarding the Products were likely to deceive, and Defendant knew or should have known that its misrepresentation was untrue and misleading.

102.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the monies paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiff and Class members.

103.    As a result of the business acts and practices described above, Plaintiff and members of the Class are entitled to such Orders and judgments that may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendant.

104.    Pursuant to Civil Code § 3287(a), Plaintiff and the Class are further entitled to pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct.  The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class are entitled to interest in

**CLASS ACTION COMPLAINT**

an amount according to proof.

105.    With respect to restitution under the UCL claim, Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

## COUNT II
### Violation of California's False Advertising Law ("FAL")
### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

106.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

107.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

108.    California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising . . .."

109.    Defendant violated § 17500 when it represented, through its false and misleading representations, that the Products possess characteristics and value that they do not have, namely that the Products provide medical-grade daily blood pressure readings.

110.    Defendant's deceptive practices were designed to induce reasonable consumers like Plaintiff to purchase the Products.

111.    Defendant's uniform, material representations regarding the Products were likely to deceive, and Defendant knew or should have known that its uniform misrepresentations were untrue and/or misleading.

112.    Plaintiff purchased the Products in reliance on the representations made by Defendant, including that the Products provide medical-grade daily blood pressure readings.

113.    Plaintiff and members of the Class have been directly and proximately injured by Defendant's conduct in ways including, but not limited to, the price paid to Defendant for the Products, interest lost, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such

**CLASS ACTION COMPLAINT**

as Plaintiff and Class members.

114.   The above acts of Defendant were and are likely to deceive reasonable consumers in violation of § 17500.

115.   In making the representations alleged herein, Defendant knew or should have known that the representations were deceptive and/or misleading, and acted in violation of § 17500.

116.   As a direct and proximate result of Defendant's unlawful conduct in violation of § 17500, Plaintiff and members of the Class request an Order requiring Defendant to disgorge its ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendant by means of such acts of false advertising, as well as interests and attorneys' fees.

117.   With respect to restitution under the FAL claim, Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

## COUNT III
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code § 1750, *et seq.*)**

118.   Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

119.   Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

120.   Plaintiff brings this action pursuant to California's CLRA, Cal. Civ. Code § 1750, *et seq*.

121.   The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

122.   The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

123.   Defendant is a "person," as defined by the CLRA in California Civil Code

**CLASS ACTION COMPLAINT**

§1761(c).

124.   Plaintiff and members of the Class are "consumers," as defined by the CLRA in California Civil Code §1761(d).

125.   Purchase of the Products by Plaintiff and members of the Class are "transactions," as defined by the CLRA in California Civil Code §1761(e).

126.   Defendant violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" by making the representations, as described herein.

127.   Defendant also violated section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by making the representations, as described herein.

128.   In addition, Defendant violated section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are misrepresented and misbranded as described herein.

129.   Defendant's uniform representations regarding the Products were likely to deceive, and Defendant knew or should have known that its representations were deceptive and/or misleading.

130.   Plaintiff and members of the Class relied on Defendant's unlawful conduct and could not have reasonably avoided injury.

131.   Plaintiff and members of the Class were unaware of the existence of facts that Defendant suppressed and failed to disclose, namely that the Products cannot provide medical-grade daily blood pressure readings.

132.   Defendant's omissions were material because a reasonable consumer would consider the lack of FDA authorization and the illegality of the Product's sale to be important when choosing which membership tier to purchase.

133.   Plaintiff and members of the Class would not have purchased the Products had they known the truth about the Products.

134.   Plaintiff and members of the Class have been directly and proximately

**CLASS ACTION COMPLAINT**

injured by Defendant's conduct.

135.    Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at which they were offered.

136.    Moreover, Defendant's conduct is malicious, fraudulent, and/or wanton in that Defendant intentionally misled and withheld material information from consumers, including to increase the sale of the Products.

137.    Pursuant to California Civil Code § 1782(a), on November 13, 2025, Plaintiff on his own behalf, and on behalf of members of the Class, provided notice to Defendant of the alleged violations of the Consumer Legal Remedies Act by notice letter setting forth Plaintiff's claims.

138.    As a direct and proximate result of Defendant's unlawful conduct in violation of the CLRA, Plaintiff and members of the Class request an Order pursuant to § 1780 enjoining such future wrongful conduct on the part of Defendant.

139.    Wherefore, Plaintiff seeks injunctive relief for Defendant's violations of the CLRA.

140.    With respect to restitution under the CLRA claim, Plaintiff alleges in the alternative that Plaintiff and Class Members lack an adequate remedy at law for the reasons already alleged above.

## COUNT IV
### Unjust Enrichment

141.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

142.    California law permits unjust-enrichment claims where restitution or disgorgement is sought to prevent a defendant from retaining ill-gotten gains resulting from the sale of an unlawful or misbranded product.

143.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

144.    To the extent required, Plaintiff asserts this cause of action in the alternative

**CLASS ACTION COMPLAINT**

to legal claims, as permitted by Rule 8.

145.    Plaintiff and the Class Members conferred a benefit on Defendant in the form of the gross revenues Defendant derived from the money Plaintiff and Class Members paid for the Products.

146.    Defendant knew of the benefit conferred on it by Plaintiff and the Class Members.

147.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class Members' purchases of the Products, which retention of such revenues under these circumstances is unjust and inequitable because the Products cannot provide medical-grade daily blood pressure readings.  This caused injuries to Plaintiff and class members because they would not have purchased the Products or would have paid less for them if the true facts concerning the Products had been known.

148.    Defendant accepted and retained the benefit in the amount of the gross revenues it derived from sales of the Products.

149.    Defendant has profited by retaining the benefit under circumstances which would make it unjust for Defendant to retain the benefit.

150.    Plaintiff and the Class Members are, therefore, entitled to restitution in the form of the revenues derived from Defendant's sale of the Products.

151.    As a direct and proximate result of Defendant's actions, Plaintiff and Class Members have suffered in an amount to be proven at trial.

152.    Plaintiff and putative Class Members have suffered an injury in fact and have lost money as a result of Defendant's unjust conduct.

153.    Plaintiff and putative Class Members lack an adequate remedy at law with respect to this claim and are entitled to non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

**CLASS ACTION COMPLAINT**

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Class; and naming Plaintiff's attorneys as Class Counsel to represent the Class;

B.    For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

C.    For an order awarding, as appropriate, compensatory, statutory, and monetary damages to Plaintiff and the Class;

D.    For an order awarding injunctive relief;

E.    For an order awarding attorneys' fees and costs;

F.    For an order awarding pre-and post-judgment interest; and

G.    For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated:  November 18, 2025             Respectfully submitted,

/s/ *Frederick J. Klorczyk III*
Frederick J. Klorczyk III (SBN 320783)
**KAMBERLAW, LLC**
305 Broadway, Suite 713
New York, NY 10007
Tel: 646.964.9604
Fax: 212.202.6364
Email: fklorczyk@kamberlaw.com

**LAUKAITIS LAW LLC**
Kevin Laukaitis (*pro hac vice forthcoming*)
954 Avenida Ponce De Leon
Suite 205, #10518
San Juan, PR 00907
Phone: (215) 789-4462
Email: klaukaitis@laukaitislaw.com

**CLASS ACTION COMPLAINT**

*Attorneys for Plaintiff and
the Proposed Class*

**CLASS ACTION COMPLAINT**